NOT FOR PUBLICATION                                        (Doc. No. 53)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                              :
Anthony FOX,                                  :
                                              :
                        Plaintiff,            :        Civil No. 14-5344 (RBK)
                                              :
            v.                                :        **Opinion**
                                              :
BAYSIDE STATE PRISON, et al.,                 :
                                              :
                        Defendant(s).  :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Anthony Fox's ("Plaintiff") Complaint against Defendants Bayside State Prison, New Jersey Department of Corrections, Rutgers University f/k/a the University of Medicine and Dentistry of New Jersey, John Powell, Gary M. Lanigan, and John Does 1–25 of Bayside State Prison ("Defendants") asserting violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution; battery; lack of informed consent; and medical malpractice (Doc. No. 8). Currently before the Court is Defendant Rutgers University f/k/a University of Medicine and Dentistry of New Jersey's Motion for Summary Judgment ("Rutgers") Motion for Summary Judgment (Doc. No. 53). For the reasons expressed below, Rutgers's Motion is **GRANTED**.

## I.      BACKGROUND

### A.      Factual Background

Plaintiff is an inmate at Bayside State Prison. *See* Def.'s Statement of Undisputed

Material Facts ("Def.'s SMF") ¶ 9.[1] On August 27, 2012, Plaintiff appeared for an emergency visit at the medical office for chest pain. *Id.* ¶¶ 9–12; Def.'s Mot. for Summ. J. ("Def.'s MSJ"), Schaaff Decl. Ex. K, at 513. The medical office performed an EKG on Plaintiff, and Nurse Rosemary McMenamin ordered an injection of 50 mg of Vistaril to calm him down. *Id.* ¶ 13; Def.'s MSJ, Schaaff Decl. Ex. L, at 17. According to Plaintiff, he initially stated that he did not want to receive the injection. Def.'s MSJ, Schaaff Decl. Ex. J, at 63. Upon the nurse asking a second time, however, Plaintiff put his arm out and leaned over the table. *Id.* at 63–64.

Following five to eight minutes, Nurse Dana Fisher observed Plaintiff stand up from his chair. Def.'s SMF ¶ 15. She instructed Plaintiff to sit back down, but Plaintiff fainted onto the floor. *Id.* She shouted for Nurse McMenamin's immediate assistance. *Id.* ¶ 16. They stabilized him, rolled him over, tried to stop the bleeding from his nose, and assessed his condition. *Id.* ¶¶ 16–17. The office also performed a second EKG. *Id.* ¶ 18. Nurse McMenamin called 911, and emergency medical technicians helicopter evacuated Plaintiff out of the prison. *Id.* ¶ 19; Def.'s MSJ, Schaaff Decl. Ex. K, at 514.

Plaintiff's sole expert witness, Joelene Boiano, RN, CCHP, authored a report concluding that the staff at Rutgers deviated from the accepted standards of care to a reasonable degree of nursing certainty. Def.'s MSJ, Schaaff Decl. Ex. C, at 1–2. She stated that Vistaril alone causes drowsiness and dizziness, and in combination with Plaintiff's other medications has an extremely high potential for sedation, drowsiness, and dizziness. *Id.* at 2. The report also indicated that it is standard nursing practice to place patients who have received Vistaril on a stretcher with the side rails up. *Id.*

---

[1] The Court will cite Rutgers's Statement of Undisputed Material Facts because Plaintiff did not respond to Rutgers's Motion for Summary Judgment.

### B.      Procedural History

Plaintiff brought a Complaint on August 26, 2014 against Defendants Bayside State Prison, New Jersey Department of Corrections, Rutgers University f/k/a the University of Medicine and Dentistry of New Jersey, John Powell, Gary M. Lanigan, and John Does 1–25 of Bayside State Prison (Doc. No. 1). Plaintiff filed an Amended Complaint on November 17, 2014 (Doc. No. 8). Following Motions to Dismiss filed by Defendants (Docs. No. 9, 23), the Court issued an Opinion and Order on August 18, 2015 (Docs. No. 31, 32) dismissing all Defendants except Rutgers and denying Rutgers's Motion to Dismiss. Rutgers filed a Motion for Partial Summary Judgment on August 21, 2015, arguing that Plaintiff's affidavit of merit was insufficient (Doc. No. 33), and the Court denied the Motion on February 11, 2016 (Docs. No. 44, 45). On October 26, 2016, Rutgers filed the present Motion for Summary Judgment (Doc. No. 53). Plaintiff did not file any opposition.

## II.    LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility

determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587. Even when the motion is unopposed, as it is here, the court must still determine whether the motion for summary judgment is appropriate. See Fed. R. Civ. P. 56(e). The Court must review the unopposed record to determine if the movant is entitled to judgment as a matter of law, notwithstanding the non-movant's silence. *See Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990).

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.  DISCUSSION

### A.  Motion to Withdraw as Counsel

Before discussing the merits of Rutgers's Motion for Summary Judgment, the Court first must address the conduct of Plaintiff's counsel, James R. Radmore. Mr. Radmore informed the Court that he intended to withdraw as counsel from the case, and the Court discussed the matter during a phone conference on October 13, 2016. During the call, the Court instructed Mr. Radmore to submit a motion to withdraw as counsel. The Court also specifically noted to Mr. Radmore his ongoing duty to respond timely to dispositive motions filed by Rutgers: "The

4

pendency of plaintiff's motion [to be relieved as counsel] will not excuse the obligations of plaintiff's counsel to timely respond to defendant's motion" (Doc. No. 51). To date, despite the passage of almost five months, Mr. Radmore has yet to file a motion to withdraw. Neither has counsel filed any response to Rutgers's Motion for Summary Judgment.

Members of the bar of New Jersey are subject to the New Jersey Rules of Professional Conduct. L. Civ. R. 103.1(a). It is an elementary duty of an attorney to provide competent representation to her client, as well as act with reasonable diligence and promptness. N.J. Rules of Prof'l Conduct r. 1.1, 1.3. The Court has powers to impose sanctions on lawyers who violate the Rules of Professional Responsibility, Local Civil Rules, and general obligations of attorneys practicing in the federal courts to work towards a just, speedy and efficient resolution of claims. *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 561 (3d Cir. 1985). The Court is not taking action at this time; it is apparently necessary, however, for the Court to remind Mr. Radmore of the importance of his duties to his client and this Court under the New Jersey Rules of Professional Conduct, New Jersey Local Rules, and Federal Rules of Civil Procedure.

### B.      Count One — Constitutional Claims

Plaintiff alleges that Rutgers failed to provide proper medical treatment and that such failure violated the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

The Eighth Amendment to the United States Constitution, applicable to individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to

set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be

mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment

violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> "Where prison authorities deny reasonable requests for medical
> treatment, however, and such denial exposes the inmate 'to undue
> suffering or the threat of tangible residual injury,' deliberate
> indifference is manifest. Similarly, where 'knowledge of the need
> for medical care [is accompanied by the] . . . intentional refusal to
> provide that care,' the deliberate indifference standard has been
> met. . . . Finally, deliberate indifference is demonstrated '[w]hen . .
> . prison authorities prevent an inmate from receiving recommended
> treatment for serious medical needs or deny access to a physician
> capable of evaluating the need for such treatment."

*Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 346 (citations omitted). "Short of

absolute denial, if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case

of deliberate indifference has been made out." *Id.* (internal quotations and citations omitted).

"Deliberate indifference is also evident where prison officials erect arbitrary and burdensome

procedures that result[] in interminable delays and outright denials of medical care to suffering

inmates." *Id.* at 347 (internal quotations and citation omitted).

In the instant matter, the Court will not address whether Plaintiff's purported injury is a

serious medical need because Plaintiff fails to furnish any evidence of deliberate indifference.

The record shows that Nurse McMenamin ordered an injection of Vistaril because Plaintiff

exhibited signs of anxiety. Plaintiff's own expert, however, states that Vistaril is used to treat

anxiety, and mere disagreement over the best course of medical treatment does not rise to an

Eighth Amendment violation. Furthermore, when Plaintiff fell over, the nurses immediately

worked to stabilize him, stop the bleeding from his nose, and assess his condition. The medical

office also performed a subsequent EKG and telephoned the paramedics. These facts suggest the

opposite of a denial of medical treatment. As for Plaintiff's allegations that he was refused a

second surgery for his nose injury, he provides no evidence that an additional surgery was

necessary. He testified that the first operation "didn't work," but Plaintiff's dissatisfaction with his medical care is not sufficient to indicate deliberate indifference.

As for Plaintiff's other constitutional claims, they too must fail. Failure to provide medical care, asserted under the Fourteenth Amendment, is analyzed under the same Eighth Amendment rubric. *See Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997). Plaintiff also alleges a violation of the right to bodily integrity. The Due Process Clause, however, "does not impose an affirmative obligation on the state to protect its citizens, *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008), and Plaintiff does not explain how this case qualifies for an exception to this rule. Plaintiff also asserts a right to privacy, but the record contains no facts implicating this right. As such, the Court dismisses all claims under the Fourteenth Amendment. As for the Fourth Amendment right against unreasonable searches and seizures and the Fifth Amendment right to procedural due process, Plaintiff presents no evidence that these rights have been violated. In summary, the Court dismisses all claims under Count One.

### C.      Count Two

Count Two appears to bring a claim for "negligent, reckless, intentional and outrageous conduct." It is unclear what causes of action Plaintiff attempts to invoke. The New Jersey Supreme Court recognizes "several avenues of relief against a doctor: (1) deviation from the standard of care (medical malpractice); (2) lack of informed consent; and (3) battery." *Howard v. Univ. of Med. & Dentistry of New Jersey*, 800 A.2d 73, 77 (N.J. 2002). Because Plaintiff asserts these three types of claims in his other Counts, the Court will dismiss Count Two as duplicative.

### D.      Count Three — Battery

Battery is "the harmful or offensive touching of plaintiff's person without his consent." *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156, 161 (D.N.J. 2012). In the medical

context, battery "is reserved for those instances where either the patient consents to one type of operation but the physician performs a substantially different one from that for which authorization was obtained, or where no consent is obtained." *Howard*, 800 A.2d at 80. Here, the record indicates that Plaintiff provided consent. In deposition testimony, Plaintiff states that he initially stated he did not want the Vistaril injection but ultimately put his arm out and leaned over to receive the injection. Evaluating such facts, no reasonable juror could conclude a lack of consent on Plaintiff's part. As such, the Court grants summary judgment in favor of Defendant on the battery claim.

> **E.      Count Three — Lack of Informed Consent**

An action for lack of informed consent concerns "the nondisclosure of medical information." *Blazoski v. Cook*, 787 A.2d 910 (N.J. Super. Ct. App. Div. 2002). A plaintiff must prove four elements to prevail in an informed consent case. He must show that:

> (1) the physician failed to comply with the [reasonably-prudent-patient] standard for disclosure; (2) the undisclosed risk occurred and harmed the plaintiff; (3) a reasonable person under the circumstances would not have consented and submitted to the operation or surgical procedure had he or she been so informed; and (4) the operation or surgical procedure was a proximate cause of plaintiff's injuries.

*Howard*, 800 A.2d 73 (N.J. 2002) (citations and emphasis omitted).

In order to show that an undisclosed risk existed, a plaintiff must show, through expert testimony, that that the risk was recognized in the medical community. *Chamberlain v. Giampapa*, 210 F.3d 154, 161–62 (3d Cir. 2000). Rutgers argues that such testimony must always come from a physician expert, invoking *Febus v. Barot, M.D.*, 616 A.2d 933, 936 (N.J. Super. Ct. App. Div. 1992). The Court disagrees with Rutgers's reading. The *Febus* court stated that that expert testimony must originate from a physician, where the lack of consent claim in the

case implicated a physician. Where the lack of informed consent allegation was brought against a nurse, the court has permitted expert opinion from a nurse. *See Nelson v. Jersey City Med. Ctr.*, 2006 WL 1000303, at *2 (N.J. Super. Ct. App. Div. Apr. 18, 2006). Here, the lack of consent claim and thus the medical community at issue involves nurses. Plaintiff's expert Nurse Boiano reports that Vistaril poses a risk of drowsiness especially in combination with Plaintiff's other medications, and that the risk is part of standard nursing knowledge. As such, the Court declines to find this testimony inadequate as a matter of law.

This Count, however, nonetheless fails on the causation element. A plaintiff must furnish medical testimony to "establish that his injury was caused by the medical procedure for which the informed consent was inadequate." *Posta v. Chung-Loy*, 703 A.2d 368, 380 (N.J. Super. Ct. App. Div. 1997). The testimony must be to "a reasonable medical probability." *Bondi v. Pole*, 587 A.2d 285, 287 (N.J. Super. Ct. App. Div. 1991) (medical malpractice). Establishing the cause of a medical condition, however, requires making a medical diagnosis, and nurses cannot provide expert opinions on medical diagnoses. *See State v. One Marlin Rifle, 30/30, 30 AS, Serial No. 12027068*, 725 A.2d 144, 149 (N.J. Super. Ct. App. Div. 1999). Here, Plaintiff's only expert report is from Nurse Boiano. She is not qualified to testify to the cause of Plaintiff's injury to a reasonable medical probability; in fact, her report states her findings to be only to a reasonable degree of nursing certainty. Thus, Plaintiff's lack of informed consent claim must fail as a matter of law, and the Court grants summary judgment in favor of Rutgers on Count Three.

### F.      Count Four — Medical Malpractice

To prove a medical malpractice claim, the plaintiff must show: (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation caused the injury. *See Teilhaber v. Greene*, 727 A.2d 518 (N.J. Super. Ct. App. Div. 1999). As with the lack

of informed claim, a plaintiff must furnish expert witness testimony that establishes the causation element to a reasonable medical probability. *Vitrano by Vitrano v. Schiffman*, 702 A.2d 1347, 1351 (N.J. Super. Ct. App. Div. 1997); *see also Evers v. Dollinger*, 471 A.2d 405, 415 (N.J. 1984). Because nurses cannot make medical diagnoses and thereby cannot provide expert testimony on the proximate cause of an injury, Nurse Boiano's expert reports are not sufficient for Plaintiff to survive summary judgment on this Count.

## IV.     CONCLUSION

For the reasons expressed above, Rutgers's Motion for Summary Judgment is **GRANTED**.

Dated:    3/10/2017                              s/ Robert B. Kugler

                                                 ROBERT B. KUGLER

                                                 United State District Judge